1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JAMIE LANDA, | ) | 1:06-cv-001037-SMS |
| | ) | |
| Plaintiff, | ) | DECISION AND ORDER DENYING |
| | ) | PLAINTIFF'S SOCIAL SECURITY |
| v. | ) | COMPLAINT (DOC. 1) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | ORDER DIRECTING THE ENTRY OF |
| Commissioner of Social | ) | JUDGMENT FOR DEFENDANT MICHAEL J. |
| Security, | ) | ASTRUE AND AGAINST PLAINTIFF |
| | ) | JAMIE LANDA |
| Defendant. | ) | |
| | ) | |
| | ) | |

Plaintiff is represented by counsel and is proceeding in forma pauperis with an action seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) and supplemental security income (SSI) benefits under Titles II and XVI of the Social Security Act (Act). Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the Magistrate Judge to conduct all proceedings in this matter, including ordering the entry of final judgment.[1] The matter is currently before the Court on the parties' briefs,

---

[1]On January 29, 2007, the Honorable Anthony W. Ishii assigned the action to the undersigned Magistrate Judge for all purposes.

which have been submitted without oral argument to the Honorable
Sandra M. Snyder, United States Magistrate Judge.

I. <u>Procedural History</u>

Plaintiff in July 2003 filed an application for DIB,
alleging disability beginning January 22, 2003, due to open heart
surgery, disc disease, pain in the chest and lower back, and
becoming easily tired. (A.R. 56-59, 86.) In August 2003,
Plaintiff filed an application for SSI, alleging disability due
to heart surgery beginning February 14, 2003. (A.R. 248-51.)

After Plaintiff's claim was denied initially and on
reconsideration, Plaintiff requested, and appeared by video
conference at, a hearing before the Honorable Bernard A. Trembly,
Administrative Law Judge (ALJ) of the Social Security
Administration (SSA), held on February 14, 2006. (A.R. 24-29,
252-53.) Plaintiff testified and was represented by an attorney.
(A.R. 15, 260-72.) On March 14, 2006, the ALJ denied Plaintiff's
application for benefits. (<u>Id.</u> at 15-20.) Plaintiff appealed the
ALJ's decision to the Appeals Council. After the Appeals Council
denied Plaintiff's request for review on June 9, 2006, (Tr. 5-7),
Plaintiff filed the complaint in this action on August 7, 2006.
Briefing commenced on March 7, 2007, and was completed with the
filing on May 18, 2007, of Plaintiff's reply brief.

II. <u>Standard and Scope of Review</u>

Congress has provided a limited scope of judicial review of
the Commissioner's decision to deny benefits under the Act. In
reviewing findings of fact with respect to such determinations,
the Court must determine whether the decision of the Commissioner
is supported by substantial evidence. 42 U.S.C. § 405(g).

1  Substantial evidence means "more than a mere scintilla,"

2  Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a

3  preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10

4  (9th Cir. 1975). It is "such relevant evidence as a reasonable

5  mind might accept as adequate to support a conclusion."

6  Richardson, 402 U.S. at 401. The Court must consider the record

7  as a whole, weighing both the evidence that supports and the

8  evidence that detracts from the Commissioner's conclusion; it may

9  not simply isolate a portion of evidence that supports the

10 decision. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir.

11 2006); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  It

12 is immaterial that the evidence would support a finding contrary

13 to that reached by the Commissioner; the determination of the

14 Commissioner as to a factual matter will stand if supported by

15 substantial evidence because it is the Commissioner's job, and

16 not the Court's, to resolve conflicts in the evidence. Sorenson

17 v. Weinberger, 514 F.2d 1112, 1119 (9th Cir. 1975).

18      In weighing the evidence and making findings, the

19 Commissioner must apply the proper legal standards. Burkhart v.

20 Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must

21 review the whole record and uphold the Commissioner's

22 determination that the claimant is not disabled if the

23 Commissioner applied the proper legal standards, and if the

24 Commissioner's findings are supported by substantial evidence.

25 See, Sanchez v. Secretary of Health and Human Services, 812 F.2d

26 509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If

27 the Court concludes that the ALJ did not use the proper legal

28 standard, the matter will be remanded to permit application of

3

1  the appropriate standard. <u>Cooper v. Bowen</u>, 885 F.2d 557, 561 (9th

2  Cir. 1987).

3      III. <u>Disability</u>

4      In order to qualify for benefits, a claimant must establish

5  that she is unable to engage in substantial gainful activity due

6  to a medically determinable physical or mental impairment which

7  has lasted or can be expected to last for a continuous period of

8  not less than twelve months. 42 U.S.C. §§ 416(i), 1382c(a)(3)(A).

9  A claimant must demonstrate a physical or mental impairment of

10 such severity that the claimant is not only unable to do the

11 claimant's previous work, but cannot, considering age, education,

12 and work experience, engage in any other kind of substantial

13 gainful work which exists in the national economy. 42 U.S.C.

14 1382c(a)(3)(B); <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1456 (9th

15 Cir. 1989). The burden of establishing a disability is initially

16 on the claimant, who must prove that the claimant is unable to

17 return to his or her former type of work; the burden then shifts

18 to the Commissioner to identify other jobs that the claimant is

19 capable of performing considering the claimant's residual

20 functional capacity, as well as her age, education and last

21 fifteen years of work experience. <u>Terry v. Sullivan</u>, 903 F.2d

22 1273, 1275 (9th Cir. 1990).

23     The regulations provide that the ALJ must make specific

24 sequential determinations in the process of evaluating a

25 disability: 1) whether the applicant engaged in substantial

26 gainful activity since the alleged date of the onset of the

27

28

impairment, 20 C.F.R. § 404.1520 (1997);[2] 2) whether solely on the basis of the medical evidence the claimed impairment is severe, that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities, 20 C.F.R. § 404.1520(c); 3) whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations, 20 C.F.R. § 404.1520(d); 4) whether the applicant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform the applicant's past work, 20 C.F.R. §§ 404.1520(e), 404.1545(a); and 5) whether on the basis of the applicant's age, education, work experience, and residual functional capacity, the applicant can perform any other gainful and substantial work within the economy, 20 C.F.R. § 404.1520(f).

With respect to SSI, the five-step evaluation process is essentially the same. See 20 C.F.R. § 416.920.

Here, Plaintiff was fifty-one years old at the time of the hearing, had an eleventh-grade education, and had worked as a certified nursing assistant, medical secretary, and telemetry technician. (A.R. 262-63.) The ALJ found that Plaintiff had severe impairments of status post cardiac bypass surgery, degenerative disc disease, and back pain which did not meet or medically equal a listing; Plaintiff retained the residual functional capacity (RFC) to perform sedentary work, and specifically, Plaintiff could perform her past relevant work as a

---

[2] All references are to the 2006 version of the Code of Federal Regulations unless otherwise noted.

medical secretary. Hence, Plaintiff was not disabled. (A.R. 17-20, 260.)

    IV. Rejection of Plaintiff's Subjective Complaints

    Plaintiff argues that the ALJ failed to state legally adequate reasons for rejecting Plaintiff's subjective claims of limited concentration and inability to perform physical exertion.

    The court in Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007), summarized the pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989). However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide " 'specific, cogent reasons for the disbelief.' " Morgan, 169 F.3d at 599 (quoting Lester, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." Id. Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." Id.
> Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. See S.S.R. 02-1p (Cum. Ed.2002), available at Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity, 67 Fed.Reg. 57,859-02 (Sept. 12, 2002); S.S.R. 96-7p (Cum. Ed.1996), available at 61 Fed.Reg. 34,483-01 (July 2, 1996). An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. See 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); see Daniels v. Apfel, 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and

6

"unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." <u>Fair</u>, 885 F.2d at 603; see also <u>Thomas</u>, 278 F.3d at 958-59.

<u>Orn v. Astrue</u>, 495 F.3d 625, 635.

The factors to be considered in weighing credibility are set forth in the regulations and pertinent Social Security rulings. They include the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the symptoms; treatment, other than medication, the person receives or has received for relief of the symptoms; any measures other than treatment the claimant uses or has used to relieve the symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529, 416.929; S.S.R. 96-7p.

With respect to the course of analysis directed by the regulations, the ALJ is first obligated to consider all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(a), 416.929(a). Once it is determined that there is a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms, the ALJ must then evaluate the intensity and persistence of the symptoms to determine how the symptoms limit the capacity for work. §§ 404.1529(b), (c); 416.929(b), (c). The ALJ will consider all available evidence. To the extent that the claimant's

symptoms can be reasonably accepted as consistent with the
objective medical evidence and other evidence, the symptoms will
be determined to diminish the claimant's capacity for basic work
activities. §§ 404.1529(c)(4); 416.929(c)(4). A claimant's
statements will not be rejected solely because unsubstantiated by
the available objective medical evidence. §§ 404.1529(c)(2);
416.929(c)(2).

Further, the pertinent Social Security Ruling provides in
pertinent part that an ALJ has an obligation to articulate the
reasons supporting the analysis:

> ...When evaluating the credibility of an individual's
> statements, the adjudicator must consider the entire
> case record and give specific reasons for the weight
> given to the individual's statements.
>
> The finding on the credibility of the individual's
> statements cannot be based on an intangible or
> intuitive notion about an individual's credibility. The
> reasons for the credibility finding must be grounded in
> the evidence and articulated in the determination or
> decision. It is not sufficient to make a conclusory
> statement that "the individual's allegations have been
> considered" or that "the allegations are (or are not)
> credible." It is also not enough for the adjudicator
> simply to recite the factors that are described in the
> regulations for evaluating symptoms. The determination
> or decision must contain specific reasons for the
> finding on credibility, supported by the evidence in
> the case record, and must be sufficiently specific to
> make clear to the individual and to any subsequent
> reviewers the weight the adjudicator gave to the
> individual's statements and the reasons for that
> weight. This documentation is necessary in order to
> give the individual a full and fair review of his or
> her claim, and in order to ensure a well-reasoned
> determination or decision.

S.S.R. 96-7p at 4.

Here, Plaintiff testified that she could no longer perform
her previous work because she had trouble concentrating and could
not monitor people's heart rhythm; she could not sit still for

eight hours without a break because her back hurt, and her lower back hurt if she did too much; she had to shift around and put her feet up because they would swell if she sat still with her feet hanging down too long. (A.R. 263, 267, 270.) She had tingling in the arms and numbness at night; she experienced chest pain if she over-exerted, and her legs swelled. (A.R. 265.) Repetitive bending from the waist caused problems; kneeling, stooping, or squatting could be done but not quickly. (A.R. 268.) She did not know what caused her problems with concentration or whether or not it was because of her shortness of breath; she could not concentrate on a book. (A.R. 264.) Plaintiff did laundry, swept and vacuumed, drove her mother to her doctor's appointments, and did grocery shopping, but Plaintiff limited it to one type of task a day or a shorter period of exertion. (A.R. 264.) Plaintiff testified she could lift seven pounds and walk fifty to seventy-five feet until her legs would feel heavy; she experienced shortness of breath in the heat or in changing temperatures. Plaintiff could sit about an hour and a half to two hours until she needed to stand. She lay down during the day to help her foot pain. (A.R. 266-67.) She did not sleep through the night because she used the bathroom and because she had to awaken to shake her numb hands; she could dress herself slowly; she walked a little bit for exercise. (A.R. 269.)

Plaintiff testified that she had filled out a couple of applications but could not lift and stand, so she got no call-backs for those jobs. (A.R. 270.)

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged

symptoms, but Plaintiff's statements concerning the intensity, duration, and limiting effects of the symptoms were not entirely credible. (A.R. 18.) Viewing the ALJ's decision as a whole, the Court concludes that the ALJ then articulated several reasons that were supported by substantial evidence and were of clear and convincing force.

With respect to Plaintiff's knee and back pain, the ALJ noted Plaintiff's treatment for back and knee pain; however, the ALJ relied on the medical evidence in concluding that Plaintiff's examinations were normal, her symptoms and treatment reflected in later progress notes were only short-term, and her treatment was conservative and unaccompanied by any significant associated clinical or neurological abnormalities. Further, she was not prescribed any intensive pain regimen or therapy, and medications were not commensurate with disabling pain. Beginning in March 2004, progress notes revealed no ongoing symptoms or clinical abnormalities that were incompatible with the residual functional capacity found by the ALJ. Indeed, Plaintiff denied chest pain and was prescribed only Ibuprofen or Bextra for lower back pain; her examinations were unremarkable; Plaintiff had not submitted evidence of treatment after May 2004,[3] and Plaintiff exhibited only back pain, no neurological abnormalities, and no significant clinical or laboratory abnormalities. (A.R. 18-19.)

Substantial evidence supports these findings. Plaintiff's records of treatment at the Sandrini Clinic in January through

---

[3] The Court notes that a partially legible document submitted to the Appeals Council reveals that on April 2006, a provider from Clinica Sierra Vista opined that Plaintiff should be excused from CALWORKS BACK TO WORK because of low back pain due to degenerative disc disease. (A.R. 257.)

April 2002 revealed severe disc space narrowing and osteophyte formation at L3-4 and to a lesser extent at L4-5, with lumbar scoliosis; mild bulging of lumbar discs; no effusion of the left knee, heat, or redness; Plaintiff was treated with Vicodin; a low back brace aggravated the pain, and Plaintiff was in traction for two hours a day. (A.R. 134, 131.) Treatment records from Oildale Community Health Center from March through September 2004 reveal no chest or heart abnormalities; range of motion in the back was within normal limits; the back was non-tender, without deformities or motor or sensory deficits; there was flank tenderness but reflexes were symmetrical and within mormal limits; and treatment was with Ibuprofen. (A.R. 244.) In March, Plaintiff reported that she had no chest pain. (A.R. 243.) In May, she was on aspirin therapy. (A.R. 242.)

With respect to Plaintiff's chest pain and/or cardiac condition, the ALJ noted Plaintiff's history of chest pain and bypass surgery on February 14, 2003. (A.R. 18.) He noted that Plaintiff suffered no significant residuals that had lasted for any continuous period of at least twelve months. (Id.)

The record supports the ALJ's characterization. As the ALJ noted, on discharge four days after her surgery, Plaintiff was instructed to begin a healthy diet, avoid heavy lifting and driving, and begin a home walking program. (A.R. 144-45.) Two weeks later, Plaintiff was doing well and was advised to increase activities as tolerated. (A.R. 182.) The ALJ noted the report and opinion of Dr. Tomas B. Rios, a consultative examiner (A.R. 199-202), who performed a comprehensive internal medicine examination of Plaintiff on November 3, 2003, concerning her heart surgery

11

and chronic back pain. (A.R. 18.) Dr. Rios noted that Plaintiff
reported that since her surgery, her chest pain had resolved
except for some residual tenderness along the operative site.
Plaintiff reported that for severe back pain, she took over-the-
counter Advil. (A.R. 199, 201.) Dr. Rios's findings on physical
examination were essentially normal; there was no palpable spasm
in the back, negative Kemp's test, some tenderness along the
lumbosacral juncture, with normal motor strength and muscle tone
in the upper and lower extremities. Dr. Rios found chronic back
pain and hypertension but no abnormality of the heart; he opined
that Plaintiff could lift and carry twenty-five pounds frequently
and fifty pounds occasionally, but she could not engage in
forceful pushing or pulling and should not engage in repetitive
bending and stooping; there were no associated findings of nerve
root irritation or spasms identified with respect to Plaintiff's
spinal tenderness. (A.R. 200-02.) There was no end organ damage
from hypertension that contributed to any of the functional
limitations. (A.R. 18-19, 202.)

The ALJ also noted that the record did not reflect
longitudinal symptoms, signs, or findings consistent with greater
limitations; Plaintiff exhibited no clinical or laboratory
abnormalities incompatible with the ability to perform sedentary
work. (A.R. 19.). He relied on the opinion of the state agency
physician finding Plaintiff able to perform light work. (A.R.
18.) State agency medical consultants Carmen Lopez, M.D., and
Elpidio Fonte, M.D., opined in March and August 2004,
respectively, that Plaintiff could lift and carry twenty-five
pounds frequently, fifty pounds occasionally, stand and/or walk

for six hours, sit about six hours, and perform occasional
postural activities, but no climbing ladders or scaffolding.
(A.R. 226-31.) Because these opinions were based on the
consistent findings of examining Dr. Rios, they constituted
substantial evidence in support of the ALJ's findings. The
opinion of a non-treating, non-examining physician can amount to
substantial evidence as long as it is supported by other evidence
in the record, such as the opinions of other examining and
consulting physicians, which are in turn based on independent
clinical findings. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th
Cir. 1995).

Further, the ALJ reasoned that no treating cardiologist or
orthopedist had opined disability. (A.R. 19.) Again, the record
supports this reasoning.

The ALJ rejected contrary opinions from treating Dr.
Fuentes, who in September 2004 opined that Plaintiff, who had
objective findings of coronary artery disease and was status post
bypass graft surgery, could not perform any work at any
exertional level because of osteoarthritis and degenerative joint
disease. No objective findings were stated. Dr. Fuentes opined
that Plaintiff had to elevate her legs for a half hour every two
to three hours; Plaintiff had been so disabled since her bypass
surgery. Plaintiff could lift and carry five pounds frequently,
ten pounds occasionally, but could not bend, squat, or crawl, and
could only occasionally climb and reach; she had mild
environmental restrictions. (A.R. 240- 41.) The ALJ reasoned that
the opinion was not fully supported by the record in view of
Plaintiff's minimal conservative care for her orthopedic

condition, absence of objective findings supporting the opinion, lack of significant residuals of heart disease, absence of sustained clinical or neurological compromise, lack of reports of ongoing symptoms or clinical or laboratory abnormalities consistent with the opinion, and the fact that the prescribed medications were Ibuprofen and Bextra. (A.R. 19.) Again, substantial evidence supports the ALJ's conclusions, and as previously discussed, the ALJ's reliance on the opinion of the consulting internal medicine examiner was appropriate.

With respect to Plaintiff's mental condition, Plaintiff claims incorrectly that the only reason given by the ALJ for rejecting the extent of Plaintiff's subjective complaints concerning her mental condition was Plaintiff's failure to obtain medical treatment. The ALJ did reason that although Plaintiff alleged a depressive disorder, she admitted that she had undergone no mental health treatment. (A.R. 17.) This finding was supported by substantial evidence because Plaintiff reported to an examining physician that she had never been psychiatrically hospitalized, and that her treating physician had said that he would address her depression after Plaintiff's cholesterol was stabilized. (A.R. 235.)

However, the ALJ additionally relied on the opinion of psychiatrist Dr. Shohreh Ghaemian, M.D., in concluding that Plaintiff exhibited no significant clinical abnormalities or limitations related thereto and that her purported depression had been diagnosed as an adjustment disorder and did not satisfy the durational requirements of the Act. (A.R. 17.)

Substantial evidence supports this finding. Dr. Ghaemian

14

performed a comprehensive psychiatric evaluation of Plaintiff on
July 31, 2004, and found that Plaintiff was cooperative and calm
throughout the examination, with ability to maintain full eye
contact; had logical, tight, and goal-oriented thought process
with concrete thinking, natural and responsive affect, and a
stated mood of depression; was fully oriented, with intact
immediate and recent memory, below-average fund of knowledge,
inability to perform serial sevens or to spell "world" backwards;
but with the ability to perform a three-step command with no
difficulty. (A.R. 17, 234-38.) Dr. Ghaemian concluded that
Plaintiff had an adjustment disorder with depressed mood, rule
out depression secondary to general medical condition; her
prognosis was guarded for the next twelve months; she could
perform routine financial transactions and simple repetitive work
on a regular basis in a work-like environment; she was able to
comprehend more complicated and complex job instructions and was
capable of retraining for more detailed employment; her
interaction with others was limited due to reported irritability;
she did not need psychopharmacological intervention, but a work-
up concerning medication would be appropriate. (Id.) The record
thus supports the ALJ's conclusion that Plaintiff did not exhibit
any significant clinical abnormalities or limitations related
thereto.

The ALJ also expressly addressed the opinion of a state
agency physician, psychiatrist Dr. Marina C. Vea. (A.R. 19, 203-
25.) Dr. Vea opined that Plaintiff suffered from depressive
symptoms and mood disturbance constituting an adjustment
disorder; Plaintiff was moderately limited in the ability to

1  understand, remember, and carry out detailed instructions;
2  Plaintiff had the understanding and memory sufficient for short
3  and simple tasks, sustained concentration and persistence
4  sufficient for unskilled work, could maintain attention in two-
5  hour increments and tolerate and maintain an ordinary work
6  schedule, could interact appropriately with others and accept
7  usual supervision ,and could sufficiently adapt to changes in the
8  workplace; Plaintiff suffered moderate difficulties in
9  maintaining concentration, persistence, or pace.

10      The ALJ stated that the claimant underwent no treatment, and
11 her consultative examination was not consistent with a severe
12 impairment lasting for at least twelve months. (A.R. 19.) Again,
13 the record supports the conclusion regarding Plaintiff's lack of
14 treatment. There was some evidence that Plaintiff was unable to
15 afford some medications. (A.R. 264 [testimony that Plaintiff was
16 supposed to take Lipitor for her cholesterol, but she could not
17 afford it and so was trying to "do" vitamins, diet, and Norvasc,
18 which was then paid for by her mother].) However, Plaintiff cites
19 to no evidence that she sought mental treatment or could not
20 afford mental treatment. It further appears that her treating
21 physician had set cholesterol control as a priority. (A.R. 235.)
22 Plaintiff had medical experience and was not experiencing
23 significant or serious symptoms such that a failure to obtain
24 treatment could not appropriately be attributed in some measure
25 to the relative mildness of her condition. An ALJ is entitled to
26 draw inferences logically flowing from the evidence. Sample v.
27 Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).

28      Finally, as the ALJ reasoned, the report of examining

consultant Dr. Ghaemian was inconsistent with a severe impairment lasting for at least twelve months, and the non-exertional restrictions imposed by the state agency and consulting examining internist were not supported by the reported symptoms of record, associated clinical abnormalities during the pertinent period, or for any continuous period of at least twelve months. (A.R. 19.) The psychiatric examiner's findings were largely normal with the exception of depressed mood, below average fund of knowledge, inability to perform serial sevens or spell backwards; it was expressly found that Plaintiff was able to perform a three-step command without difficulty. (A.R. 236.) Her GAF, or global assessment of functioning, was 60 to 65, which indicated one with only mild symptoms or difficulty who was generally functioning pretty well, or one with moderate symptoms or difficulties at best. Diagnostic and Statistical Manual of Mental Disorders at 30, 32 (4th ed.). The GAF was not an assessment of a serious problem. Substantial evidence supported the ALJ's assessment of the medical record.

Further, Dr. Ghaemian noted that Plaintiff asserted that her depressed mood was caused by her inability to be able to work, and she stated that if she were able to work, her depression would improve. (A.R. 235, 237.) Yet Plaintiff was able to perform simple tasks, comprehend complicated and complex job instructions, could be retrained for more detailed employment, and was no even in need of psychopharmacological intervention, pursuant to Dr. Ghaemian's opinion. (jA.R. 238.)

Finally, the ALJ noted that lay opinions had been given less weight than objective medical evidence and medical source

1  statements from disinterested parties. (A.R. 19.) The ALJ thus

2  discounted the statements of Plaintiff's daughter-in-law

3  concerning Plaintiff's pain, paranoia, forgetfulness, and

4  attention span. (A.R. 101-09, 104-07 The ALJ's giving of

5  specific, germane reasons was sufficient. Dodrill v. Shalala, 12

6  F.3d 915, 918-19 (9th Cir. 1993).

7      It is established that an ALJ may rely on the conservative

8  nature of treatment or a lack of treatment in rejecting a

9  claimant's subjective complaint of pain. Johnson v. Shalala 60

10 F.3d 1428, 1433-34 (9th Cir. 1995). Included in the factors that

11 an ALJ may consider in weighing a claimant's credibility are the

12 claimant's reputation for truthfulness; inconsistencies either in

13 the claimant's testimony or between the claimant's testimony and

14 the claimant's conduct, daily activities, or work record; and

15 testimony from physicians and third parties concerning the

16 nature, severity, and effect of the symptoms of which the

17 claimant complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th

18 Cir. 2002). Further, it is appropriate to consider the

19 inconsistency of a documented improvement with claims of constant

20 pain. Morgan v. Commissioner, 169 F.3d 595, 599 (9th Cir. 1999).

21 Likewise, a doctor's opinion that a claimant can work is

22 appropriately considered. Moncada v. Chater, 60 F.3d 521, 524 (9th

23 Cir. 1995). It was appropriate for the ALJ to consider the lack

24 of objective indicia of Plaintiff's impairments, including lack

25 of objective clinical findings, inconsistent activities of daily

26 living, use of conservative treatment, extent of efforts to

27 obtain relief, and effectiveness of medications in controlling

28 the symptoms. Soc. Sec. Ruling 96-7p and 20 C.F.R. §

1 | 416.929(c)(4)(1)(vii); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th
2 | Cir. 1996); <u>Bunnell v. Sullivan</u>, 947 F.2d at 346 (9th Cir. 1991)
3 | Although the inconsistency of objective findings with subjective
4 | claims may not be the sole reason for rejecting subjective
5 | complaints of pain, <u>Light v. Chater</u>, 119 F.3d 789, 792 (9th Cir.
6 | 1997), it is one factor which may be considered with others,
7 | <u>Moisa v. Barnhart</u>, 367 F.3d 882, 885 (9th Cir. 2004); <u>Morgan v.</u>
8 | <u>Commissioner</u> 169 F.3d 595, 600 (9th Cir. 1999).

9 |      Therefore, the Court concludes that the ALJ cited clear and
10 | convincing reasons for rejecting Plaintiff's subjective
11 | complaints of pain to the extent alleged, and that the ALJ's
12 | reasons were properly supported by substantial evidence in the
13 | record and sufficiently specific to allow this Court to conclude
14 | that the ALJ rejected the claimant's testimony on permissible
15 | grounds and did not arbitrarily discredit Plaintiff's testimony.

16 |     V. <u>Failure to Find that Plaintiff Suffered from a
17 | Severe Mental Impairment</u>

18 |      Plaintiff challenges the ALJ's conclusion that Plaintiff's
    adjustment disorder was not a severe mental impairment at step
19 | two of the analysis.
20 |
21 |      At step two, the Secretary considers if claimant has "an
22 | impairment or combination of impairments which significantly
23 | limits his physical or mental ability to do basic work
24 | activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). This is
25 | referred to as the "severity" requirement and does not involve
26 | consideration of the claimant's age, education, or work
27 | experience. <u>Id.</u> The step-two inquiry is de minimis screening
28 | device to dispose of groundless claims. <u>Bowen v. Yuckert</u>, 482

U.S. 153-54 (1987). The Secretary is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of [sufficient medical] severity." 42 U.S.C. § 1382c(a)(3)(F).

Basic work activities include the abilities and aptitudes necessary to do most jobs, such as physical functions of walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b).

An impairment or combination thereof is not severe when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work. An impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a); Soc. Sec. Ruling 85-28; Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996).

Plaintiff argues that Drs. Ghaemian and Vea, the consulting psychiatric examiner and the non-examining state agency physician, both opined that Plaintiff had a severe mental impairment. In support of this assertion, Plaintiff cites to Dr. Vea's assessment of moderate difficulties in maintaining concentration, persistence or pace, made by Dr. Vea in the course

1  of rating the "B" criteria of the listings. (A.R. 218.) Plaintiff
2  also cites Dr. Ghaemian's diagnosis and assessment of adjustment
3  disorder with depressed mood and GAF of 60-65, her assessment of
4  ability to perform simple, repetitive jobs regularly, ability to
5  comprehend more complex job instructions, and to be retrained for
6  more detailed employment; unspecified limitations on interaction
7  with others due to irritability; and lack of need for
8  psychopharmacological intervention. (A.R. 237-38.)

9      However, the fact that moderate difficulties in maintaining
10 concentration, persistence, or pace were assessed by an expert in
11 connection with the "B" criteria does not necessarily make
12 Plaintiff's impairment severe. The pertinent regulations provide
13 that with respect to the functional area of concentration,
14 persistence, or pace, the SSA uses a five-point scale of none,
15 mild, moderate, marked, and extreme; it is only the last point on
16 the scale that represents a degree of limitation that is
17 incompatible with the ability to do any gainful activity, and
18 mild limitations are generally consistent with an impairment that
19 is not severe. 20 C.F.R. §§ 404.1520a(c), (d), 416.920a(c), (d)
20 (2006). The governing regulations thus do not preclude a finding
21 of no severity.

22     Here, the ALJ expressly relied on the findings of Dr.
23 Ghaemian upon examination, which, as previously detailed, were
24 essentially normal except for spelling backwards and performance
25 of serial seven's, and which included an express finding that
26 Plaintiff could perform a three-step command with no difficulty.
27 (A.R. 236.) Further, the doctor's findings on examination lacked
28 any significant clinical abnormalities or limitations. (A.R. 17,

236-37.) The doctor's functional assessment supported the finding that Plaintiff's impairment did not more than minimally affect her ability to perform basic mental work activities because she was capable of performing simple, repetitive work, could comprehend more complicated and complex instructions, was capable of retraining to more detailed employment, did not have major depression, and did not even need medication. Dr. Ghaemian's limitations concerning interaction with others and her questionable ability to perform "more complicated and detailed financial management" (A.R. 237-38) were vague. Dr. Ghaemian stated only that Plaintiff's interaction with colleagues and society was "limited due to her reported irritability," and thus it was within the province of the ALJ reasonably to resolve any ambiguity. To the extent that evidence is inconsistent, conflicting, or ambiguous, it is the responsibility of the ALJ to resolve any conflicts and ambiguity. Morgan v. Commissioner, 169 F.3d 595, 603 (9th Cir. 1999). Likewise, it was for the ALJ to determine the unclear nature and extent of any limitation on more complicated and detailed financial management tasks. Because the ALJ has authority to interpret ambiguous medical opinions, Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993), the Court must defer to the ALJ's decision. Here, the ALJ reasonably reviewed and assessed the evidence and stated specific and legally adequate reasons, supported by substantial evidence, for his conclusion that Plaintiff's mental impairment of adjustment disorder was not severe. He stated reasons for rejecting the opinion of the state agency physician: Plaintiff was never treated for her mental impairment, and the opinion of Dr.

Ghaemian was inconsistent with a severe impairment lasting for at least twelve months. (A.R. 19.) It was appropriate for the ALJ to rely on the opinion of the consulting examiner instead of the opinion of the non-examining state agency physician. The opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

Further, substantial evidence supported the ALJ's finding that Plaintiff did not establish that her mental impairment was of sufficient twelve-month duration. An impairment must last or be expected to last at least twelve continuous months. 20 C.F.R. §§ 404.1509, 416.909. Further, the inability to work caused by the impairment must last at least twelve continuous months. Barnhart v. Walton, 535 U.S. 212, 214-22 (2002). A claimant carries the burden of establishing a prima facie case of disability, including that he or she was disabled by an impairment for the requisite period. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995); 20 C.F.R. §§ 404.1509 (DIB), 416.909 (SSI). Plaintiff was not treated for her mental condition, so there is no period of treatment to use for evaluation. Plaintiff did not present objective medical evidence that she suffered any non-severe effect for the requisite period. As previously discussed, the ALJ appropriately rejected Plaintiff's subjective claims of inability to concentrate and pain. Plaintiff's inability to concentrate was of uncertain origin; Plaintiff did not attribute her problem to her depression. (A.R. 263-64.) Further, Plaintiff testified that she had applied for work, and physical (as distinct from mental) limitations had caused her not

1  to be considered for the positions. (A.R> 270.) It further

2  appears that Plaintiff did not seek or obtain treatment for her

3  mental impairment after Dr. Ghaemian recommended reassessment of

4  her need for medications in the future. (A.R. 111.)

5      In any event, even if it were erroneous to conclude that

6  Plaintiff's impairment was not severe, the ALJ considered all the

7  claimed limitations from Plaintiff's mental impairment in

8  formulating Plaintiff's RFC. (A.R. 18-19.) The ALJ appropriately

9  rejected the non-exertional restrictions imposed by the state

10  agency and consultative examiner as not supported by symptoms of

11  record or associated clinical abnormalities during the period at

12  issue for any continuous period of twelve months. (A.R. 19.)

13     Accordingly, any error of the ALJ at step two was harmless.

14  It is established that an ALJ's failure to find an impairment

15  severe, even if erroneous, is harmless error where at the later

16  RFC stage of the analysis, the ALJ discussed the impairment, the

17  medical findings, the pertinent symptoms, and the applicable

18  opinions concerning functional limitations. Lewis v. Astrue, 498

19  F.3d 909, 911 (9th Cir. 2007).

20     VI. Disposition

21     Based on the foregoing, the Court concludes that the ALJ's

22  decision was supported by substantial evidence in the record as a

23  whole and was based on the application of correct legal

24  standards.

25     Accordingly, the Court AFFIRMS the administrative decision

26  of the Defendant Commissioner of Social Security and DENIES

27  Plaintiff's Social Security complaint.

28     The Clerk of the Court IS DIRECTED to enter judgment for

1   Defendant Michael J. Astrue, Commissioner of Social Security,

2   and against Plaintiff Robert Hunter.

3

4   IT IS SO ORDERED.

5   **Dated:   January 29, 2008**          **/s/ Sandra M. Snyder**
                                        UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28